

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00307-CV

Robert **FLYNN** and Wian Flynn,
Appellants

v.

**KELLER WILLIAMS INC. REALTORS** and The Boehm Team,
Appellees

From the 216th Judicial District Court, Kendall County, Texas
Trial Court No. 10-334-A
Honorable N. Keith Williams, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Catherine Stone, Chief Justice
  Sandee Bryan Marion, Justice
  Rebeca C. Martinez, Justice

Delivered and Filed:  March 13, 2013

AFFIRMED

This appeal arises from a take-nothing summary judgment rendered in favor of appellees,

Keller Williams, Inc. ("Keller Williams") and The Boehm Team.  We affirm.

## BACKGROUND

Appellants, Robert and Wian Flynn, own two properties in Boerne, Texas: 101 Shady

Ridge and 309 River Ridge.  The Flynns entered into a Residential Real Estate Listing

Agreement to sell the house located at 101 Shady Ridge.  The agreement identified the brokers

as Keller Williams and Amy Boehm-The Boehm Team.  The Flynns also intended to sell the

house located at 309 River Ridge at a future date. At some point in time, another Keller Williams real estate agent, Emily Buttlar, told Boehm that Buttlar's client, Jim Peterson, was interested in buying the 309 River Ridge house.

In late March 2008, the Flynns, their son-in-law Brian Tedder, Peterson, and Boehm all met at the 309 River Ridge house. By the end of the meeting, the Flynns agreed to allow Peterson and his wife to move into the house without an earnest money deposit. A closing date was set for April 21, 2008. The closing never occurred, and eventually the Flynns evicted the Petersons, who had been enjoying several rent-free months.

The Flynns sued Keller Williams, The Boehm Team (naming Amy Boehm as the principal), and Emily Buttlar, alleging common law fraud and statutory fraud pursuant to Texas Business and Commerce Code section 27.01. The Flynns alleged they hired the defendants to be their broker and to list their real property for sale, but instead, the defendants acted as agent for the potential buyer and, in acting as agent for both parties, committed common law and statutory fraud. According to the Flynns, they wanted to first sell the 101 Shady Ridge house, but based on conversations with, and assurances made by Boehm and her agent Buttlar, the Flynns decided to sell their house at 309 River Ridge to Peterson. The Flynns alleged both Boehm and Buttlar made representations concerning Peterson's creditworthiness. Finally, the Flynns alleged there was a conspiracy between Buttlar, The Boehm Team, and Keller Williams under which The Boehm Team and Keller Williams would represent the Flynns and split the fee while Buttlar represented the buyer in the same transaction.

In the course of discovery, the defendants served the Flynns with requests for admissions, which the Flynns failed to timely answer. The Flynns later filed a motion to strike the deemed admissions and extend the discovery deadline. About a month later, Keller Williams and The Boehm Team (hereinafter, collectively, "appellees") moved for a traditional summary judgment

and a no-evidence summary judgment on the Flynns' common law fraud and statutory fraud causes of action. Appellees also filed a motion for sanctions against the Flynns. The Flynns responded. On March 16, 2012, the trial court signed two orders: (1) striking the deemed admissions and extending the discovery deadline to respond to the request for admissions to the date the response was filed, and (2) granting appellees' motion for summary judgment, without stating its grounds, denying the motion for sanctions, and severing out the Flynns' claims against Buttlar. On appeal, the Flynns assert the trial court erred in rendering summary judgment in favor of appellees.

## STANDARD OF REVIEW

We review the grant of a summary judgment de novo. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We first review the trial court's summary judgment under the no-evidence standard of Texas Rule of Civil Procedure 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the non-movant's claim or defense. TEX. R. CIV. P. 166a(i). The trial court is required to grant the motion unless the non-movant produces more than a scintilla of summary judgment evidence that raises a genuine issue of material fact on each challenged element. *Id.* More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the non-movant fails to produce more than a scintilla of evidence under this burden, then there is no need to analyze whether the movant's proof satisfied the traditional summary judgment standard of Rule 166a(c). *Ridgway*, 135 S.W.3d at 600.

**SUMMARY JUDGMENT EVIDENCE**

Appellees' no-evidence motion for summary judgment alleged no evidence on each element of the Flynns' two causes of action. The elements of common law fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001). The elements of statutory fraud in a real estate transaction are a: "(1) false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering into that contract; or (2) false promise to do an act, when the false promise is (A) material; (B) made with the intention of not fulfilling it; (C) made to a person for the purpose of inducing that person to enter into a contract; and (D) relied on by that person in entering into that contract." TEX. BUS. & COM. CODE ANN. § 27.01(a) (West 2009). Additionally, when a plaintiff seeks to hold a real estate broker or agent liable for the misrepresentations of another, the plaintiff must prove the broker or agent (1) knew of the falsity of the misrepresentation or concealment; and (2) failed to disclose the party's knowledge of the falsity of the misrepresentation or concealment. TEX. OCC. CODE ANN. § 1101.805(e),(f) (West 2012).

The Flynns' response to appellees' no-evidence motion for summary judgment consisted only of Robert's affidavit. In his affidavit, Robert attested that while the listing agreement for the 101 Shady Ridge property was in effect, Keller Williams and The Boehm Team through its realtor Buttlar, together with Boehm, brought forward a buyer for the 309 River Ridge property. According to Robert, instead of effectuating a sale of the 101 Shady Ridge property, Keller

Williams, Boehm, The Boehm Team, and Buttlar entered into negotiations while representing the Flynns in the sale of the 309 River Ridge property. Robert then stated as follows:

> At the 309 River Ridge house, but prior to the meeting with [Full Throttle] Amy Boehm advised me that even though she had an agreement to represent us [on the sale of the 101 Shady Ridge property] she didn't have an agreement to get paid on the sale of this property and wanted [an] agreement from me to pay her a commission from the sale of the 309 River Ridge property. I made this agreement to pay the commission on the sale of 309 River Ridge to Amy Boehm. At the time of the meeting the only connection of Amy Boehm to 309 River Ridge was as my representative and agent. Amy Boehm never disclosed her interests were adverse to us concerning the listing agreement we had entered into whereby the sale of 309 River Ridge was part and parcel to the sale of both pieces of property.

> Amy Boehm with whom we had a listing agreement on a companion property began to offer advice to me regarding the sale of the 309 River Ridge property. Amy Boehm also began to ask questions of Full Throttle Investments of Texas LLC's representative regarding earnest money and moving in right away. At that time the representative of Full Throttle Investments of Texas LLC became angry with Amy Boehm and in the presence of others, myself included, raised his voice to Amy Boehm and advised her that she was about to lose the sale of the real estate.

> If in fact her duties were adverse to us in the sale of 309 River Ridge because she used her position as our agent and fiduciary and never advised us that she was a fiduciary on one piece of property but acting adverse to us in another property on behalf of the buyer, Full Throttle Investments of Texas, LLC.

> In fact her conduct was contrary to said allegation because she was questioning the buyer's representative on behalf of and for us in the sale of 309 River Ridge giving us the impression and conclusion that she was there as our agent and never made any attempts to correct that impression, allegation or convince me otherwise.

> My wife and my belief that Amy Boehm was acting in our interests as our agent was corroborated by the fact that Amy Boehm solicited and obtained a fee agreement on the sale of 309 River Ridge prior to the time the negotiations occurred and at the property.

> Therefore at the time of the negotiations and inspection to sell 309 River Ridge the Defendants Keller Williams Realty, [The] Boehm Team and Amy Boehm were acting as our agent while at the same time their realtor/agent Emily Buttlar was acting adverse to our interests.

Emily Buttlar advised me that she had been involved in other real estate deals with Full Throttle Investments of Texas, LLC and Jim Peterson prior to the contract at issue in this case for 309 River Ridge. At the time of the negotiations and prior to entering into a contract with Full Throttle Investments of Texas, LLC on the 309 River Ridge property Emily Buttlar of The Boehm Team advised me in the presence of all at the meeting that Jim Peterson was of good character and was financially stable and had sufficient funds in the bank to pay cash for the real estate within two weeks.

After hearing Emily Buttlar of the Boehm Team advise us that there had been prior real estate deals with Jim Peterson and Peterson had sufficient funds to pay for the real estate [with] cash, Amy Boehm and I had a conversation in which she agreed that we should sell the property and agreed to do the contract for us.

Based on current pleadings from the Defendants they claim that Peterson was a complete fraud and is solely responsible for our losses. However, Peterson was the client of The Boehm Team to whom The Boehm Team owed a fiduciary duty. It was Peterson's character that was used to convince us to enter into the agreement in the first place and these representations came from Emily Buttlar of The Boehm Team. It was not until Amy Boehm of the Boehm Team acting as our agent agreed to write the contract that we agreed to the offers made by Jim Peterson of Full Throttle Investments of Texas, LLC that they were reduced to writing and made part of a contract on 309 River Ridge.

After the agreement to sell, Amy Boehm told me that they really had no idea how much money Peterson and Full Throttle Investments of Texas, LLC had in the bank and had never checked his accounts.

As a result of this escrow agreement and the contract entered into we were unable to remove the buyer from the residence at 309 River Ridge for a long period of time. Our damages were the loss of the sale and tied to the inability to remove the buyer from the home pursuant to the lease. Further, after Peterson was removed from the house, we spent money to clean and repair damages made to the house by him. As a result of the conduct of the Defendants we needed to sell the house again. We could not live in it and were making mortgage payments on it while not living in it and recovering no rent from the buyer. Time was of the essence to sell that house and because we did not sell it, we eventually sold the house for a loss months later.

The only alleged false representations—about Peterson's good character, financial stability, and creditworthiness—were made by Buttlar, and the Flynns' claims against her remain pending in a severed action. We conclude Robert's affidavit contains no allegation that appellees made any false representation to the Flynns or that appellees knew the falsity of

Buttlar's alleged misrepresentations or concealment at the time Buttlar made her alleged statements. Therefore, Robert's affidavit does not provide more than a scintilla of summary judgment evidence to raise a genuine issue of material fact on each element of the Flynns' claims so as to defeat appellees' entitlement to a no-evidence summary judgment. Because the Flynns failed to produce more than a scintilla of evidence under the no-evidence standard, there is no need to analyze whether appellee's summary judgment proof satisfied the burden related to traditional summary judgment motions. *See Ridgway*, 135 S.W.3d at 600.

## CONCLUSION

For the reasons stated above, we affirm the trial court's order rendering summary judgment in favor of appellees.

Sandee Bryan Marion, Justice